## CONTINUATION OF APPLICATION FOR SEIZURE WARRANT

I, Eric Falletich, being first duly sworn, do depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Drug Enforcement Administration ("DEA"), a position I have held since August 2021.  As part of my duties, I investigate criminal violations of the federal drug trafficking laws. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances. I have received training in the area of drug investigations, money laundering, financial investigations, and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in investigations that have led to the issuance of search warrants involving violations of drug laws. These warrants involved the search of locations including: residences of targets, their associates, and relatives; storage facilities; smartphones; and computers. Evidence searched for, and recovered, in these locations has included controlled substances, records pertaining to the expenditures and profits realized therefrom, monetary instruments, and various assets that were purchased with the proceeds of the drug trafficking.

2.      Through my training, education, and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, the methods of payment for such drugs, the laundering of narcotics proceeds, and the dialect, lingo, and coded language used by narcotics traffickers. In connection with my duties, I

investigate criminal violations of the Federal and State controlled substance laws including, but not limited to, distribution of controlled substances, possession of controlled substances with the intent to distribute, as well as conspiracy and attempt to do the same, in violation of 21 U.S.C. §§ 846 and 841 (a)(1); use of communication facilities to facilitate drug trafficking offenses, in violation of 21 U.S.C. § 843(b), conspiracy to commit money laundering, in violation of 18 U.S.C § 1956(h) and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), 18 U.S.C. § 1956(a)(1)(B)(i), and 18 U.S.C. § 1957.

3. The information contained in this affidavit is based in part on: (a) my personal participation in this investigation; (b) information provided by the Lansing Police Department; (c) laboratory analysis reports; (d) surveillance reports; (e) criminal history records; (f) information and controlled purchases from confidential informants; and (g) my training and experience and the training and experience of other law enforcement agents. This affidavit is submitted for the limited purpose of establishing probable cause in support of this seizure warrant application.  Thus, it does not contain every fact known by me or the United States regarding this investigation.

## PROPERTY TO BE SEIZED

4. This affidavit is submitted in support of an application for a warrant authorizing the seizure of the $19,940.00 United States currency (hereinafter, the NARCOTIC PROCEEDS): The NARCOTIC PROCEEDS are currently in possession of the Lansing Police Department.

5. Based on the investigation of OMNI WYNNE, there is probable cause to believe that the NARCOTIC PROCEEDS would, in the event of a criminal conviction, be

2

subject to forfeiture and that, because the NARCOTIC PROCEEDS can be readily removed, a protective order would not be sufficient to assure the availability of the NARCOTIC PROCEEDS for forfeiture. Further, the acts or omissions giving rise to the forfeiture occurred in the Western District of Michigan and a forfeiture action against the aforementioned NARCOTIC PROCEEDS may be properly brought in this district.

## APPLICABLE STATUTES

6. Title 21 U.S.C. § 853 provides for criminal forfeiture of the proceeds of controlled substance violations. A person who is convicted of a controlled substance violation, where the violation is punishable by more than a year imprisonment, "shall forfeit to the United States, irrespective of any provision of State law—any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation," and/or any property "used or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation." 21 U.S.C. §§ 853(a)(1) and 853(a)(2).

7. Similarly, 21 U.S.C. § 881(a)(6) provides for the civil forfeiture of the proceeds and facilitating property of controlled substance violations, specifically:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

21 U.S.C. § 881(a)(6).

**PROBABLE CAUSE TO SUPPORT SEIZURE OF THE NARCOTIC PROCEEDS**

8.  Investigators previously received information that OMNI WYNNE was trafficking cocaine in the Lansing, Michigan area.

9.  On June 7, 2023, the United States Postal Service Inspectors (USPSI) interdicted a white medium flat rate Priority Mail parcel bound for "O. Wynne, 2843 East Grand River Ave, East Lansing, MI 48823." The interdiction of the package yielded the seizure of a block of a substance suspected to be cocaine weighing approximately 1110 grams. Following the interdiction, USPSI coordinated with the DEA Lansing Post of Duty (POD) and in turn the Lansing Police Department (LPD) Special Operations Section to conduct a controlled delivery to the recipient identified by the DEA as Omni Wynne.

10.  On June 9, 2023, DEA Lansing POD identified Omni Wynne's residence as ▇▇▇▇▇▇▇▇ Court, Lansing, Michigan.[1] DEA/LPD observed Omni Wynne leave this residence en-route to receive the USPS package at her private mailbox. When Omni Wynne arrived a successful enforcement operation was conducted in which Omni Wynne received the package containing "sham" narcotics and was immediately apprehended. Omni Wynne was transported to the Lansing Police Department where she provided a post arrest interview/statement. During her statement, Omni Wynne advised that she would collect money and send it back to a subject in California via USPS.

---

[1] I know Ms. Wynne's residential address, and I can provide it to the court upon request if necessary to a determination of probable cause. However, I have removed the address from this document to minimize spillage of personally identifiable information.

4

Omni Wynne also stated that there was further cocaine in her residence from a package previously sent.

11.  On the same date, a State of Michigan search warrant for the residence of ▉▉▉▉▉▉ Court, Lansing, Michigan was executed. During the search of ▉▉▉▉▉▉ Court, Lansing, Michigan DEA SA James Shaw located and seized an additional white medium flat rate Priority Mail parcel containing 1018 grams of suspected cocaine.  This was located in the upstairs southwest bedroom belonging to Omni Wynne. In the closet of the same bedroom, LPD Officer Nicholas Zuber located and seized the NARCOTIC PROCEEDS inside of a purse. In the same closet, SA James Shaw located and seized a Mossberg 20-gauge shotgun which contained 3 shotgun shells. On the floor between the closet and the dresser, LPD Sgt. Brad Hough seized an AMT Hardballer .45 caliber semi-automatic handgun along with 11 loose rounds of .45 caliber ammunition in a Louis Vitton pouch.  In the same bedroom, officers located and seized a digital scale.

12.  OMNI WYNNE did not claim ownership of the NARCOTIC PROCEEDS. When police asked about her knowledge of the money in the home, WYNNE admitted she had been shipping and receiving packages on behalf of another individual, but she stated the packages were already sealed before they came into her possession. WYNNE stated that she never "asked questions" but acknowledged that some of the boxes she picked up from her mailboxes contained narcotics. Investigators have not identified that WYNNE has a lawful job or any other source of legitimate income substantiating the NARCOTIC PROCEEDS.

13. The NARCOTIC PROCEEDS have been in the custody of the Lansing Police Department since seizure on June 9, 2023. WYNNE's case was subsequently referred to the U.S. Attorney's Office. On February 13, 2024, a federal grand jury returned an Indictment against WYNNE charging her with Possession with Intent to Distribute Controlled Susbtances.

14. OMNI WYNNE doesn't have a criminal history.

15. Based upon my training and experience involved with investigating narcotics traffickers, I know that:

   a. Drug traffickers commonly use vehicles to convey and/or hide narcotics and the proceeds to those narctocis

   b. Drug traffickers commonly place assets in names other than their own to avoid detection of these assets by law enforcement agencies;

   c. Even though these assets are in other persons' names, the drug dealers continue to use these assets and exercise dominion and control over them;

   d. Large-scale narcotics traffickers commonly maintain on hand large amounts of U.S. currency in order to maintain and finance their on-going narcotics business;

   e. I am also aware that the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular trafficking in controlled substances.

6

## CONCLUSION

16. Based on the information contained in this affidavit, there is probable cause to believe that the NARCOTIC PROCEEDS constituted, or were derived from, proceeds obtained, directly or indirectly, as the result of drug trafficking, in violation of 21 U.S.C. § 841(a)(1) and were used or, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation. The NARCOTIC PROCEEDS are therefore subject to criminal forfeiture pursuant to 21 U.S.C. § 853(a)(1) and (2) and civil forfeiture pursuant to 21 U.S.C. § 881(a)(6). I submit that probable cause exists that a restraining order under 21 U.S.C. § 853(e) would be insufficient to ensure the availability of the NARCOTIC PROCEEDS for forfeiture in the event of conviction. Accordingly, I request a criminal seizure warrant pursuant to 21 U.S.C. § 853(f). I also request a civil seizure warrant pursuant to 18 U.S.C. § 981(b).